ANDREWS et al. v. ENGLISH.

No. 33213.   Oct. 12, 1948.

Rehearing Denied Nov. 16, 1948.

*199 P. 2d 202.*

Thomas & Thomas and John W. Tyree, all of Lawton, for plaintiffs in error.

M. W. Pugh, of Marlow, and Logan, Cummins & Oerke, of Lawton, for defendant in error.

HURST, C.J. This is a creditors' suit brought by Earnest E. English against Dan E. Andrews and Ruth Andrews, his wife, to cancel certain deeds conveying realty executed by Dan E. Andrews to Ruth Andrews. From the judgment of the trial court canceling the deeds in question, the defendants appeal.

The facts, as disclosed by the evidence, are as follows: Four of the deeds in question are dated June 18, 1940, and the acknowledgments bear the same date. One of the deeds, and the acknowledgment thereto, are dated September 11, 1940. H. T. Miller, an abstractor, who prepared the deeds for Andrews at his request, testified that the request for preparation of the deeds was made on the day the deeds were dated or the day preceding that date, but that it was approximately four months after they were prepared when Andrews executed them. The evidence as to the delivery of the deeds is in conflict and will be discussed separately later. In the latter part of September, 1940, the plaintiff, English, was first employed by Dan Andrews in connection with his business as a plumbing contractor. On August 7, 1941, English received an injury to his back while working for Andrews. A proceeding was instituted by English against Dan Andrews before the State Industrial Commission, and on June 11, 1942, he recovered an award therein. On August 25, 1942, Ruth Andrews filed of record all of the five deeds and paid the filing fees in connection therewith.

24 O.S. 1941 §10 provides:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

The above section is clear. The statute requires a combination of two factors to exist together. First, the instrument must be made either (1) without a fair and valuable consideration, or (2) made in bad faith, or (3) made for the purpose of hindering, delaying or defrauding creditors. Second, the person asserting that the instrument is void under the statute must be one to whom the maker is at the time indebted, or one to whom the maker is at the time under any legal liability.

The trial court found that no bad faith on the part of the defendants existed. We must, then, for the first of the two factors examine the evidence of consideration for the deeds. Both Dan Andrews and Ruth Andrews testified that for a period of over 12 years Ruth Andrews worked in her husband's plumbing shop as bookkeeper and office manager and was not paid therefor, and that there was no agreement at the time of beginning to work for any payment. Ruth Andrews testified that she took the place of a man who had been paid $25 a week. She testified that she felt that something was owing to her and discussed the matter with her husband in 1936 or 1940. Mrs. Andrews testified that the $25 per week figure is based solely on the fact that the man who previously had been the bookkeeper had been paid that amount. There is no evidence of any express agreement made at that time.

Under our emancipation acts (32 O.S. 1941 §§5, 9, 15), women can contract

669

with third persons and with their husbands, but between husband and wife an obligation of payment does not arise in the absence of an express agreement. There is generally no implied obligation on the part of the husband to pay his wife for services even though they are rendered outside of ordinary household duties. Between strangers there arises a rebuttable presumption that work is done with the expectation of payment, but between husband and wife the presumption is that the work is performed gratuitously and no payment is expected, which presumption may be rebutted by proving an express, valid promise to pay. 41 C.J.S. 602, 603, note 62; 27 Am. Jur. 66. The trial court was justified in the finding inherent in the judgment that no express promise to pay for his wife's services had validly been made by the defendant Dan Andrews.

The time when the defendant Dan Andrews became under legal liability to the plaintiff makes of prime importance the question of delivery. Plaintiff urges that Dan Andrews was under such a legal liability at the time he first went to work for Dan Andrews when Dan Andrews failed to provide Workmen's Compensation Insurance. The record is silent as to whether Dan Andrews carried Workmen's Compensation Insurance at that time. It is established that he was without such insurance at the time of the injury to English on August 7, 1941. Furthermore, the award by the State Industrial Commission was rendered against Dan Andrews before the deeds in question were filed for record.

Dan Andrews testified that the deeds were picked up at the abstractor's office at the time they were executed and that he delivered them to his wife at the abstractor's office in the presence of Miller. Miller testified that Dan Andrews was alone when he picked up the deeds and there was no delivery of the deeds made in his presence at his office. Ruth Andrews testified that the deeds were delivered in 1940, but she did not remember the exact date or where the deeds were delivered to her. She testified that they were put in the plumbing shop safe where they remained until recorded on August 25, 1942.

There is other evidence which bears indirectly upon the question of delivery of the deeds. On August 9, 1940, Dan E. Andrews brought a suit to quiet title in connection with one of the pieces of property, and on October 9, 1940, in that case, he made an affidavit wherein he stated he was owner of that realty. And on November 23, 1940, a finding in that case was made that Dan Andrews was the legal owner and in possession of the property. On February 28, 1941, the assessment list wherein these pieces of property were listed was signed by Dan E. Andrews as owner. There is much evidence as to payments made on the various mortgages covering the parcels of realty here involved, but the record is silent as to who made the payments in 1940 and 1941. The earliest payments shown in the record to have been made by Ruth Andrews were on January 8, March 18, April 9, August 10, and September 12, 1942, on one piece of property. It is not disclosed who made the other payments during that year. In connection with the payments on the three mortgages of the Home Building & Loan Association, the record shows that in 1942 drafts were drawn on Ruth Andrews' account in the Security Bank & Trust Company, but the record also discloses that on December 10, 1940, a letter from the Home Building & Loan Association to the Security Bank & Trust Company showing authority for the bank to pay a draft each month drawn on "Ruth Andrews by Dan E. Andrews". The card attached is signed "Ruth Andrews by Dan E. Andrews". In February, 1944, Dan E. Andrews signed a building permit as owner for the purpose of remodeling one of the pieces of property here involved.

A delivery is essential to the validity of a deed. Maynard v. Taylor, 185 Okla. 268, 91 P. 2d 649. From all of the facts

and circumstances, we cannot say that the general finding, which necessarily includes a finding that there was no effective delivery of the deeds until the time of recording, is clearly against the weight of the evidence.

At the time English sustained his compensable injury, Andrews carried no Workmen's Compensation Insurance. It is clear that from that date Andrews was under a legal liability to pay any award that might be finally rendered. 85 O.S. 1941 §11.

We think the evidence was such as to justify the court in finding (1) that the deeds were not delivered to Mrs. Andrews until after the accident, (2) that they were made without a fair and valuable consideration, and (3) that Andrews was under a legal liability to plaintiff at the time they were delivered. The establishment of these facts or elements made out a case for plaintiff, and we cannot say that the general finding, which included these facts, was clearly against the weight of the evidence.

Affirmed.

DAVISON, V. C. J., and WELCH, CORN, GIBSON, and LUTTRELL, JJ., RILEY, J., concurs in conclusion.

Rehearing Denied Nov. 23, 1948.